IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>LORENZO WILLIAMS,<br><br>  Defendant. | No. 00-CR-56-CJW-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the Court on defendant's fourth Motion for Compassionate Release and Amended Motion for Compassionate Release.[1] (Docs. 219 & 224). Defendant is represented by counsel. The government filed a timely resistance. (Doc. 228). Defendant timely replied. (Doc. 231). For the following reasons, the Court **denies** defendant's motion.

## I. BACKGROUND

On November 2, 2001, the Court sentenced defendant to life in prison upon his conviction for one count of interference with commerce by robbery. (Doc. 101). Defendant robbed a cab driver after holding a knife to the driver's throat, threatening to kill him, and forcing him to drive to a remote location. (Doc. 101-3, at 4-5). This was the sixth robbery of a cab driver defendant committed, several of the others also involving him using a knife. (*Id.*, at 5).

In the Presentence Investigation Report ("PSR"), defendant was assessed with a base offense level of 20. (*Id.*, at 7). Defendant received a four-level enhancement for

---

[1] *See* Docs. 202; 206; 213.

use of a weapon and a four-level enhancement for abduction of the victim, resulting in an adjusted offense level of 28. (*Id.*). Defendant was convicted after trial, so the PSR did not reduce his sentence for acceptance of responsibility. (*Id.*, at 7-8). Defendant was found to be a career offender, making his total offense level 37. (*Id.*, at 8). Defendant's multiple prior violent and other convictions resulted in 10 criminal history points. (*Id.*, at 15). Two additional points were added because defendant committed the instant offense while on probation or parole, resulting in 12 criminal history points, placing him in criminal history category V. (*Id.*). Because defendant was a career offender, however, his criminal history category became VI. (*Id.*). With a total offense level 37, criminal history category VI, defendant's advisory Guidelines range was 360 months to life in prison. (*Id.*, at 30). The government filed a Notice of Intent to Seek an Enhanced Penalty, under Title 18, United States Code, Section 3559(c), such that defendant's statutory penalty was life in prison without parole. (*Id.*).

## II. COMPASSIONATE RELEASE PROVISIONS

"A federal court generally 'may not modify a term of imprisonment once it has been imposed' [unless] Congress has provided an exception to that rule." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)); *see United States v. Addonizio*, 442 U.S. 178, 189 & n.16 (1979). As part of the Sentencing Reform Act of 1984, Title 18, United States Code, Section 3582(c), Congress created two exceptions to this general rule. First, Section 3582(c)(2) authorizes the sentencing court to reduce a term of imprisonment based on a guidelines range subsequently lowered by the Sentencing Commission, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." In Title 28, United States Code, Section 994(u), Congress directed the Commission to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for [a particular] offense may be reduced." This directive gave the Commission the power "to

2

decide whether and to what extent [Commission] amendments reducing sentences will be given retroactive effect." *Braxton v. United States*, 500 U.S. 344, 348 (1991). "A court's power under § 3582(c)(2) thus depends in the first instance on the Commission's decision not just to amend the Guidelines but to make the amendment retroactive." *Dillon*, 560 U.S. at 826.

Second, Section 3582(c)(1)(A), authorized the sentencing court, upon motion of the Director of the Bureau of Prisons, to reduce a sentence of imprisonment if it finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress later amended Section 3582(c)(1)(A) to allow a defendant to directly petition a district court for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

In Title 28, United States Code, Section 994(t), Congress directed the Commission to define "what should be considered extraordinary and compelling reasons for [a] sentence reduction[.]" In 2006, the Commission promulgated Sentencing Guidelines Section 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the [BOP]" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. *See* Pub.

3

L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. *See United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). As a result, and in the absence of a binding policy statement, the courts of appeals had to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits considering the question—including the Eighth Circuit—determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. *See United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v.*

4

*Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); *see also United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Four circuits, in contrast, took the view that a change in the law can serve as a basis for a sentence reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

In *Crandall*, the Eighth Circuit Court of Appeals stated:

> Congress opted in 2018 to assign a new, less substantial, mandatory punishment for multiple violations of § 924(c) going forward, but it did not declare that the previous Congress—decades earlier—prescribed an inappropriate punishment under the circumstances that confronted that legislative body. To the contrary, the more recent Congress declined to change the law retroactively and left existing sentences in place.
>
> Congress from time to time prospectively increases or decreases existing criminal penalties, so that circumstance may not be "extraordinary" as an empirical matter. Even if it were, the circumstance here would not be a "compelling" reason to reduce a sentence. The new Congress did not disapprove of the penalties established by the prior Congress for a different era. The legislative action in 2018 is comparable to the decision of a sentencing judge in 2018 to impose a lesser sentence than a predecessor imposed in 1990 for the same offense. Neither circumstance is a sufficient ground to support a reduction of a previously imposed sentence under § 3582(c)(1)(A). The views of a present-day Congress, like those of a present-day sentencing judge, about the appropriate punishment for a present-day offense do not establish an "extraordinary and compelling reason" for reducing a sentence imposed years ago. The compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy. . . . Accordingly, we conclude that a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of "extraordinary and compelling reasons" for a reduction in sentence under § 3582(c)(1)(A).

5

25 F.4th at 585-86.

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment voted on April 5, 2023, to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. at 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to Section 1B1.13 now renders the policy statement applicable to defendant-filed motions.

In particular, the Sentencing Commission amended Section 1B1.13, moving the list of extraordinary and compelling reasons from the Commentary to the Guidelines itself, with significant changes. Two changes are at issue here:

> (b)(6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction . . . a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §1B1.13.

6

Case 1:00-cr-00056-CJW-MAR    Document 232    Filed 03/12/24    Page 6 of 14

The Sentencing Commission's explanation for the Subsection (b)(6) relied on a sentence from the Senate Report to conclude that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. The Senate Judiciary Committee opined that the "unusual cases in which the eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. In context, the passage reflects that Congress anticipated that "changed circumstances" warranting a sentence reduction include things like aging, health issues, or changes in family circumstances that might occur while an offender is serving a long sentence *Id*. The passage reflects that Congress understood Section 3582(c)(1)(A) requires an offender to prove some other "extraordinary and compelling circumstances," apart from simply the existence of a long sentence. *Id*.

On April 27, 2023, the Commission submitted its proposed Guidelines amendments to Congress. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; *see* 28 U.S.C. § 994(p). That, of course, does not mean that Congress has adopted the Commission's interpretation. *DePierre v. United States*, 564 U.S. 70, 87 n.13 (2011).

### III. ANALYSIS

#### A. *Exhaustion*

Before an offender can seek relief in federal court, the offender must first request compassionate release from the warden of the facility where the offender is housed. Here, defendant first sought compassionate release from the warden of his facility, which was denied. (Doc. 225-2). Accordingly, the Court will proceed to the merits of defendant's argument.

7

## B. Unusually Long Sentence

Defendant argues that the Court imposed an "unusually long sentence" on him, under Guidelines Section 1B1.13(b)(6). (Doc. 225, at 8-17). Defendant argues that defendant's second-degree robbery convictions would not qualify as predicate offenses for an enhanced sentence under the so-called residual clause of Section 3559 because the Supreme Court has since deemed that clause unconstitutionally vague. (*Id.*, at 8-15). Defendant argues that under *United States v. Mathis*, 579 U.S. 500 (2016), and other decisions interpreting crimes of violence, his prior robbery convictions would no longer qualify as predicate offenses. (*Id.*). Defendant also argues that his crime of conviction does not qualify as a serious violent felony under Title 18, United States Code, Section 3559(c)(2)(F)(i) because the Eight Circuit wrongly decided the issue in *United States v. House,* 825 F.3d 381 (8th Cir. 2016). (*Id.*, at 15).

As noted, prior to the enactment of Section 1B1.13(b)(6), the Eighth Circuit Court of Appeals held that a nonretroactive change in law regarding sentencing "whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." *Crandall*, 25 F.4th at 586. It bears repeating that, in reaching that conclusion, the court observed that:

> The views of a present-day Congress, like those of a present-day sentencing judge, about the appropriate punishment for a present-day offense do not establish an "extraordinary and compelling reason" for reducing a sentence imposed years ago. The compassionate release statute is not a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy."

*Id*.

After the Eighth Circuit's decision in *Crandall*, the Supreme Court issued an opinion in *Concepcion v. United States*, 597 U.S. 481 (2022), in which a defendant

8

sought a reduced sentence under Section 404(b) of the First Step Act, which authorizes district courts that imposed a sentence for certain covered offenses to "impose a reduced sentence . . . as if sections 2 and 3 of the Fair Sentencing Act [of 2010] . . . were in effect at the time the covered offense was committed." *Id.* at 488 (quotation omitted). The defendant in *Concepcion* was eligible for Section 404(b) relief, but the district court denied relief because it found it could not consider intervening changes of law or fact after the initial sentencing. *Id.* at 486-87. The Supreme Court reversed, concluding that the broad discretion of federal courts "to consider all relevant information at an initial sentencing hearing . . . also carries forward to later proceedings that may modify an original sentence." *Id.* at 491.

The Eighth Circuit Court of Appeals has since found that *Concepcion* did not explicitly or implicitly overrule *Crandall*. "*Concepcion* does not bear on the threshold question whether any given prisoner has established an 'extraordinary and compelling reason' for release." *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1003-04 (8th Cir. 2023) (quotation marks and citation omitted). As the Eighth Circuit Court of Appeals explained,

> *Concepcion* concerned what district judges may consider in exercising their discretion to grant or deny a sentence reduction. No doubt the Court's reasoning would apply when a motion for compassionate release establishes an extraordinary and compelling reason for relief other than a nonretroactive change in the law, such as the defendant's medical condition, age, or family circumstances, and the court is exercising its discretion to grant relief. But *Concepcion* is irrelevant to the threshold question of whether [a defendant] has shown an 'extraordinary and compelling reason' for [Section] 3582(c)(1)(A) relief.

65 F.4th at 1004 (quotation marks and citation omitted).

In *Rodriguez-Mendez*, the Eighth Circuit Court of Appeals also considered the apparent impact of the then-pending 2023 Guidelines amendments, specifically the

9

amendments at Guidelines Sections 1B1.13(b)(6) and 1B1.13(c), and concluded that those amendments would not change its reasoning in *Crandall*:

> It thus appears that the Commission proposes to adopt (or to express more clearly) that nonretroactive changes in sentencing law may not establish eligibility for a [Section] 3582(c)(1)(A) sentence reduction, as we held in *Crandall*, but may be considered in exercising a court's discretion whether to grant compassionate release relief to an eligible defendant, consistent with the Supreme Court's decision in *Concepcion*.
> For these reasons, we conclude that *Crandall* remains controlling Eighth Circuit law that is binding on our panel.

*Rodriguez-Mendez*, 65 F.4th at 1004.

The Court of Appeals' reading of the now adopted Section 1B1.13 appears overstated because the language is more nuanced. True, Section 1B1.13(c) appears to generally assert that nonretroactive changes in the law may not establish eligibility for compassionate release, but that same section carves out an exception. The first dependent clause of Section 1B1.13(c) states "Except as provided in subsection (b)(6)," and then goes on to prohibit consideration of nonretroactive changes in the law.

Subsection (b)(6) appears to allow consideration of nonretroactive changes in the law when the issue is whether an offender received an "unusually long sentence." But, then Section (b)(6) provides an exception to the exception, by stating that:

> a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed . . . .

Thus, reading Section 1B1.13(b)(6) together with Section 1B1.13(c), it appears that the Commission is saying that a court may consider nonretroactive changes in the law, except

10

nonretroactive Guidelines changes, only if the offender is claiming entitlement to compassionate release for an unusually long sentence.

The Commission's approach to compassionate release for unusually long sentences appears to be unprincipled and inconsistent. In an effort to create a ground for compassionate release for unusually long sentences, and yet still comply with Section 1B1.10 and the Supreme Court's decision in *Dillon v. United States*, 560 U.S. 817 (2010), the Commission barred consideration of nonretroactive changes to the Guidelines. Paradoxically, though, the Commission would allow courts to consider changes in the law that Congress could have, but chose not to, apply retroactively.

Although Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction," 28 U.S.C. § 994(t), that delegation of authority "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). An agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—i.e., a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

Here, the Commission has done just that. It has purported to authorize individual judges to apply retroactively laws that Congress has intentionally chosen not to apply retroactively while carving out nonretroactive changes to the Guidelines. A principled approach would either authorize compassionate release based on all nonretroactive changes in the law, or none. It is unprincipled and inconsistent to adopt an approach that allows compassionate release based on some, but not all, nonretroactive changes to the law.

Section 1B1.13(b)(6) also violates the Separation of Powers Doctrine, which requires that a branch not impair another in the performance of its constitutional duties. It is for Congress, not the courts, to determine whether to apply a change in the law prospectively or retrospectively.

The Court finds that the Commission does not have the authority to circumvent Congress in authorizing compassionate release for nonretroactive changes in the law. Thus, to the extent defendant seeks compassionate release based on nonretroactive changes to the law, the Court denies the motion.

The Court also finds Section 1B1.13(b)(6) is unworkably vague. The Commission would have a court determine if a sentence is "unusually long" by determining if there was a "gross disparity" between the sentence the offender received and the sentence the offender would receive today. Setting aside for the moment the monumental problems with considering nonretroactive changes in the law in determining what sentence an offender would receive today, the terms here lack any form of definition and invite arbitrary application. The Commission has not defined "gross disparity." Is a disparity gross if the sentence was 10 percent more than what the offender would receive today? Or does it become "gross" only if it passes a 20 percent mark? Or does it gross out a judge only if the disparity is more like 30 percent? Or, like determining if something is obscene, is a court just supposed to know it when it sees it? *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (J. Stewart, concurring). Perhaps the Commission should have used the phrase "obscene disparity" to make the unreasonable demand it is making of judges more absurdly obvious.

Thus, to the extent defendant relies on nonretroactive changes in the law as a ground for compassionate release, the Court rejects the argument. In short, the Court finds Guidelines Section 1B1.13(b)(6) to be inconsistent with Section 1B1.13(c) and contrary to the Eighth Circuit's decision in *Crandall*. It is also unworkably vague. It

invites arbitrary justice. Congress abolished parole in 1984, and in doing so, gave weight to the interest in finality of judgment. Congress has not re-instated the parole system. But Section 1B1.13(b)(6) would place judges in the position of being one-person parole boards authorized to revisit the judgment imposed by an earlier judge in light of vague principles and opinions to second guess the decision of an earlier jurist, authorized to consider some nonretroactive changes in the law but not other nonretroactive changes in the law. It invites wholesale reconsideration of sentences that violates the principle of finality in sentencing reflected in Title 18, United States Code, Section 3582(c)(1)(A). It is an unprincipled and unreasonable expansion of what Congress authorized in allowing courts to grant compassionate release.

Even if the Court is incorrect in its interpretation of Section 1B1.13(b)(6), the Court would decline to apply the section because the Court has a policy disagreement with it. The Court finds that section unprincipled and inconsistent with the goal of sentencing finality and the separation of powers. The Commission has not promulgated this provision based on any empirical studies or analysis and has failed to provide courts with a reasonable basis to apply Section 1B1.13(b)(6).

Regardless, even if the Court were to apply Section 1B1.13(b)(6), it would not entitle defendant to relief. Defendant seeks compassionate release based on an assertion that his prior convictions would no longer serve as predicate offenses under Section 3559 or the career offender guidelines. That argument fails, even under Section 1B1.13(b)(6), because that Guidelines provision applies only to "a change in the law." As the Eighth Circuit Court of Appeals has already pointed out, *Mathis* and its progeny "did not change the law; it was an interpretation of existing law." *Crandall*, 25 F.4th at 586 (citing *Martin v. United States*, 904 F.3d 594, 597 (8th Cir. 2018)).

Even if the Court were to find defendant articulated an extraordinary and compelling reason for compassionate release, the Court would not grant the motion after

considering the factors under Title 18, United States Code, Section 3553(a). As noted, the instant offense was defendant's sixth robbery of cab drivers, most of which involved him threatening to kill the victim with a knife. He also has a prior burglary conviction. He committed this, and many other, offenses while on probation or parole. Defendant is a violent, recidivist offender.

## IV. CONCLUSION

For these reasons, defendant's motions for compassionate release (Docs. 219 & 224) are **denied**.

**IT IS SO ORDERED** this 12th day of March, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa